Elmer Lee McDONALD, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–76–828.

Court of Criminal Appeals of Oklahoma.

Sept. 28, 1977.

As Corrected Oct. 24, 1977.

---

Clarke L. Randall, Public Defender, Tulsa, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Catherine Gatchell Naifeh, Legal Intern., for appellee.

## OPINION

PER CURIAM:

Appellant, Elmer Lee McDonald, hereinafter referred to as defendant, was charged, tried before a jury and convicted in the District Court, Tulsa County, Case No. CRF–76–197, for the offense of Robbery With Firearms, After Former Conviction of a Felony. Punishment was assessed at a term of fifteen (15) years under the direction and control of the Department of Corrections of the State of Oklahoma. From said judgment and sentence in accordance with the verdict the defendant has perfected his timely appeal to this Court.

Betty Jane Smith was the State's first witness. She stated that on January 16, 1976, she and a friend, Henry Stahl, were watching television in her apartment in Tulsa when there was a knock at the door. She answered and a man wearing a stocking over his head and holding a pistol forced his way into the room. Another man holding a sawed-off shotgun and also wearing a stocking entered behind the first. The two intruders demanded and took money and jewelry and forced the witness Stahl to lie on the floor. The man with the pistol took Stahl's wallet, credit card case, and money

clip. The men subsequently left. The witness identified the defendant as the man with the shotgun, stating that, although his facial features were distorted by the stocking, she was able to recognize him because of his physical size and hairline. Ms. Smith also testified that she picked the defendant and his companion out of a police line-up. This identification was subsequent to the defendant's arrest.

Henry C. Stahl then gave testimony corroborative of Ms. Smith's although he was unable to identify either assailant. Over defense objections he identified State's Exhibit No. 1 as the credit card case and contents taken from him by the man with the pistol during the robbery.

Tulsa Police Officer Curtis Hanks then testified that on January 22, 1976, he and Detective Larry Johnson went to the defendant's home to arrest him on what he believed to be an outstanding warrant for grand larceny, noting that the defendant was also a suspect in the Smith-Stahl robbery. The defendant answered the door and was informed that he was under arrest for grand larceny. Defendant then asked for and received permission to obtain a shirt from his bedroom and Detective Johnson followed. Detective Johnson then told the witness to retrieve a billfold from the bedroom closet. Officer Hanks stated that he went to the closet and observed a credit card case on the closet shelf, lying near to the front edge, with its contents scattered about. The contents revealed the name "Henry Stahl." He then identified State's Exhibit No. 1, as the card case and contents. The witness further stated that no other items taken in the robbery were found in the defendant's apartment. The State then rested.

The defense was by way of alibi, both the defendant and his wife testifying that on the day of the robbery and for several days thereafter defendant remained in bed in his home, ill with cirrhosis of the liver. The defendant also testified that when he was arrested Johnson did not accompany him into the bedroom and that he retrieved his shirt from a bed post and not from the closet. He further stated that he had no idea how Stahl's card case got into his bedroom. Both the defendant and Mrs. McDonald testified, however, that the other suspect in the armed robbery was Mrs. McDonald's son and that he had been in their residence after the 16th and before the defendant's arrest. The defense then rested.

The defendant's first assignment of error is that the trial court erred in failing to sustain defendant's motion to suppress State's Exhibit No. 1, Mr. Stahl's card case and contents. Two evidentiary hearings were held, one sometime prior to trial and the second immediately prior to the State's opening statement.

At the first evidentiary hearing Officer Hanks and Detective Johnson testified. The substance of their testimony was that although defendant was a suspect in the instant case, the arrest was made on the basis of an outstanding arrest warrant for grand larceny issued sometime in 1975. No evidence was presented to show probable cause to arrest the defendant for the Smith-Stahl armed robbery. Both officers testified that Stahl's card case was discovered lying on a shelf in plain view when Johnson made a brief visual search of the closet before letting the defendant remove a shirt. The motion to suppress State's Exhibit No. 1, was overruled.

Fearing that the State would mention the card case in its opening statement, the defense moved for a second evidentiary hearing prior thereto. During this hearing the trial court took judicial notice of all official records contained in the Court Clerk's Office. Defendant then presented a copy of an arrest warrant in Case No. CRF-75-2991 charging grand larceny. The warrant had been issued in 1975 and had been served and returned on December 18, 1975. The State objected to its introduction since it ordered the arrest of a codefendant. Defense counsel then stated that he must have the wrong warrant, and asked that the court again take judicial notice of all the Court Clerk's records. The trial court agreed and the defendant then moved that

the card case and contents be suppressed since the warrant upon which the defendant was arrested on January 22nd, had been returned over a month prior thereto. The trial court again denied the motion, basing its ruling on the fact that both Hanks and Johnson stated at the first evidentiary hearing that they arrested defendant on the 22nd of January as a suspect in the instant case. However, the record of the first hearing clearly shows that a 1975 grand larceny arrest warrant was the basis for the arrest.

On appeal defendant presents a certified copy of the Criminal Appearance Docket Sheet in Case No. CRF–75–2991 wherein Ray Wesley Alexander and Elmer Lee McDonald were charged with grand larceny. The docket sheet shows that on December 18, 1975, a preliminary information and arrest warrant were issued. On the 18th, the defendant was brought before the magistrate and on the 19th, he was arraigned. On December 30, 1975, a return of warrant was filed. However, this warrant was apparently the one presented at the evidentiary hearing bearing Alexander's name. No other return of warrant appears on the docket sheet. On January 9, 1976, a preliminary hearing was held and the defendant was bound over for trial to answer the charge of grand larceny.

The State contends that the defendant failed to present a proper record on appeal since the *McDonald* grand larceny warrant was not part of the record, the only warrant in Case No. CRF–75–2991 being one for Alexander. It is then asserted that the *McDonald* warrant must be presumed valid. We disagree. The record before us is as complete as possible under the circumstances. The State has made no attempt to submit the *McDonald* warrant and, if anything, the record and the State's brief indicate that no warrant may have existed. There is no indication that the defendant was charged with grand larceny in any case other than CRF–75–2991.

█ The validity of searches made incident to an arrest must rest on the validity of the initial arrest itself. *Barr v. State*,

Okl.Cr., 531 P.2d 1399 (1975); *Embree v. State*, Okl.Cr., 488 P.2d 588 (1971). In the instant case, if the officers had no warrant, they had no authority to arrest the defendant. The transcripts of both evidentiary hearings and the trial fail to demonstrate that either officer had probable cause to believe the defendant committed the Smith-Stahl robbery. See, 22 O.S.1971, § 196(3). The officers may have entertained a suspicion, but mere suspicion is not a substitute for probable cause. *Greene v. State*, Okl. Cr., 508 P.2d 1095 (1973); *State v. Baxter*, Okl.Cr., 528 P.2d 347 (1974).

If the grand larceny warrant did exist it appears from the record before us that it had been executed. The defendant had been arrested and brought before a magistrate for arraignment in December, 1975, prior to the defendant's arrest in this case on January 22, 1976.

█ As stated in 6A C.J.S. Arrest § 57, it is the general rule in criminal cases that once an arrest warrant is executed it is exhausted. It will not support a subsequent arrest except under certain limited conditions not found here. See *Carlson v. Landon*, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

█ It could be argued that the card case was in plain view. However, for the "Plain View Doctrine" to be applied the officers must have been in a place where they had a lawful right to be. They were not. A search illegal in its inception cannot be legalized by what it brings to light. *Story v. State*, Okl.Cr., 452 P.2d 822 (1969); *Graham v. State*, Okl.Cr., 447 P.2d 200 (1968).

For all of the reasons set out above it is our opinion that the trial court erred in not sustaining the defendant's motion to suppress and the judgment and sentence appealed from must be, and the same is hereby REVERSED and REMANDED for further proceedings not inconsistent with this opinion.